| | |
|---|---|
| UNITED STATES DISTRICT COURT<br>EASTERN DISTRICT OF NEW YORK<br>----------------------------------------------------------- X<br>:<br>TYRONE LAVAL CARTHEN,           :<br>                                                          :<br>                            Plaintiff,        :<br>                                                          :<br>              -against-                          :<br>                                                          :<br>JUANA ORTIZ, ROBERT HUNTER and  :<br>KAMRON CHASE,                             :<br>                                                          :<br>                            Defendants.    :<br>----------------------------------------------------------- X | C/M<br><br><br><br><br>**MEMORANDUM DECISION**<br>**AND ORDER**<br><br>19-cv-6392 (BMC) (LB) |

**COGAN**, District Judge.

Police bodycam footage is not always dispositive of claims alleging excessive force. But it is here. In this suit under 42 U.S.C. § 1983, plaintiff *pro se* claims that the police placed him in a chokehold, grabbed and pulled him out of his vehicle, and then sexually assaulted him. Defendants have moved for summary judgment based on the bodycam footage. For the following reasons, the motion is granted.

There are actually four bodycam videos, as there were four officers involved. Together, the videos cover the entire time that plaintiff claims he was assaulted. They begin as the police first approached his vehicle, continue after plaintiff's removal from the scene, and show the processing at the precinct. The cameras never came off of plaintiff for even a moment from the beginning to the end of the incident. The four videos tell the whole story without any interruption, and the video images and audio track are clear. No reasonable jury could find that the officers did anything excessive, let alone that they sexually assaulted plaintiff.

The videos show quite clearly that all of the officers, and especially the one that interacted most with plaintiff at the scene, exhibited professionalism throughout the incident. They were remarkably patient, never raised their voices, and never became confrontational.

Although plaintiff cut off every attempt the arresting officer made to explain plaintiff's obligation not to make an illegal turn and to produce a license and registration when stopped, this officer and all of the others kept their cool at all times.

Indeed, the video shows plaintiff being unreasonable, rude, and defiant. Although acknowledging that he did make an illegal turn, plaintiff initiated a 15-minute rant in response to the officer's polite request to see his license and registration. Plaintiff refused to give his name, denied any obligation to have a driver's license or car registration, refused to produce any identification, demanded to see a superior officer for no stated reason, and rejected the officer's polite request that he get out of his car. Plaintiff claimed that he had a "birthright" not to disclose his name and to drive without a license, asserting in a pugnacious tone that the reason he did not need a license is that he was "traveling" not driving (even though he was behind the wheel of a moving vehicle). Instead of giving his name, he gave what he described to the officer as an "attribute, not a name," referring to himself as "unique." He lectured the officer on his view of the law and the Constitution. He asserted that a "license" is only needed for someone in a profession, and since his car had a bumper sticker saying, "Not for Hire," and was not "in commerce," the law did not require him to have a driver's license. A lot of what plaintiff said was gobbledygook, like repeatedly saying, when the officer asked if he understood, that "I don't understand, I overstand," and "always remember that I overstand."

When plaintiff repeatedly refused to get out of his car, the officer used practically no force at all. The officer placed one hand on plaintiff's upper arm and, at most, applied the slightest of pressure to prompt plaintiff to leave the vehicle. At that point, plaintiff demanded the officer remove his hand, and the officer did. Plaintiff then stepped out of the car under his own

2

power. The only other physical contact that any officer had with him was to place him in handcuffs. Nothing shows excessive force, much less a sexual assault.

In opposition to defendants' motion for summary judgment, plaintiff has submitted a single paragraph in which he merely continues to obfuscate. He complains that defendants sought excessive discovery during the case and did not give him discovery to which he thinks he was entitled. He asserts that he has an unnamed witness who would contradict the extensive footage in undescribed ways. He protests that the video "has been altered because it's not showing everything that happened," but he has not offered any evidence to show that or explain how it could be done so seamlessly, as the footage from each camera is the same with no interruptions, except that each video is from the different perspectives of each individual officer's body camera.

These conclusory assertions are not enough. As defendants point out, the Second Circuit has recognized that video evidence, like any other kind of evidence, can be so overwhelming that no reasonable jury could reach a conclusion that contradicts it. See Addona v. D'Andrea, 692 F. App'x 76, 78 (2d Cir. 2017) (citing Scott v. Harris, 550 U.S. 372, 380 (2007)). Viewing video evidence as dispositive may be the exception rather than the rule, but this case falls within the exception. Enough public resources have been spent dealing with plaintiff and his fake claim.

Defendants' motion for summary judgment is granted and the Clerk is directed to enter judgment dismissing the complaint. Although plaintiff has paid the filing fee to commence this action, the Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this order

3

would not be taken in good faith and therefore *in forma pauperis* status is denied for purpose of an appeal.  See <u>Coppedge v. United States</u>, 369 U.S. 438, 445 (1962).

**SO ORDERED.**

Digitally signed by Brian M. Cogan
_____
U.S.D.J.

Dated:  Brooklyn, New York
         December 6, 2020